IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESUS VELASQUEZ, § | | |
| #45744-177, § | | |
| Petitioner, § | | |
| v. § | | 3:16-CV-02374-M-BK |
| § | | (3:13-CR-026-M-1) |
| UNITED STATES OF AMERICA, § | | |
| Respondent. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge. Upon review of the relevant pleadings and applicable law, it is recommended that the motion be **DENIED**.

**I. BACKGROUND**

In July 2013, Petitioner pled guilty to conspiring to distribute a controlled substance and, in September 2014, was sentenced to 270 months' imprisonment and a four-year term of supervised release. Crim. Doc. 458. His direct appeal was dismissed as frivolous. Crim. Doc. 503 at 1. In March 2016, Petitioner unsuccessfully moved to reduce his sentence under the 2014 amendment to the Sentencing Guidelines. Crim. Doc. 515 at 2.

In this timely section 2255 motion, Petitioner alleges he received ineffective assistance of counsel during the guilty plea and sentencing proceedings. Doc. 1 at 4. Petitioner also indirectly challenges the voluntariness of his guilty plea, Doc. 9 at 4, and claims a gross miscarriage of justice arising from the use of a "vague and incorrect" drug-quantity calculation method in the Presentence Report ("the PSR"). Doc. 1 at 5; Doc. 2 at 11. The government has filed a response

1

in opposition. Doc. 8. Petitioner has filed a reply. Doc. 9. Thus, the section 2255 motion is now ripe for review.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Under section 2255, a petitioner can collaterally challenge his conviction "only on issues of constitutional or jurisdictional magnitude." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

### A. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

To prove the deficient performance under *Strickland*, a petitioner must show that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

2

To demonstrate prejudice in the context of a guilty plea, the petitioner must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* To prevail on a claim of ineffective assistance of counsel at sentencing, the petitioner must demonstrate that his sentence was increased on account of the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-204 (2001).

### 1. Counsel allegedly misled Petitioner regarding his guilty plea and advisory sentencing guidelines range

In his first claim, Petitioner makes the related arguments that (1) counsel misled him about entering a guilty plea to the one-count original indictment and failed to inform him about the factors that would be used to determine his advisory sentencing guidelines range; and (2) because of counsel's failure, his guilty plea was not knowing and voluntary. *See* Doc. 1 at 4; Doc. 2 at 6; Doc. 9 at 4. Specifically, Petitioner claims, "I signed a plea agreement accepting responsibility for 2.5 kilos of methamphetamine and it's [sic] distribution," but defense counsel never advised "that the government was going to sentence . . . [Petitioner based on the offense] involving a quantity of more than 100.9 kilos of methamphetamine." Doc. 1 at 4. Petitioner states that he is not guilty of the 100.9 kilos and that argues

> absolutely no proof of such quantity was ever produced to me or at court proceedings, just suppositions and imagined sales based on a mathematical assumption that I did the same thing I accepted that I committed and multiplying it by 160 weeks.

Doc. 1 at 4. Petitioner also maintains he "never entered a guilty plea to any counts of the superseding indictment," and yet, his sentence was enhanced based on those counts. Doc. 1 at 4.

3

A guilty plea must be knowingly, voluntarily, and intelligently made to be constitutionally valid. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). When determining whether a plea is voluntary, the court looks to all of the relevant circumstances surrounding it. *Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000) (citing *Brady v. United States*, 397 U.S. 742, 749 (1970)). The defendant pleading guilty must be competent, have notice of the charges against him, understand the consequences of his plea, have advice of competent counsel, and not be induced by promises or threats. *Id.* at 365. A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded to court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly). Moreover, a defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. *Cervantes,* 132 F.3d at 1110.

Petitioner argues that he did not make an informed decision to plead guilty because defense counsel mislead him. Doc. 9 at 4. Petitioner surmises counsel misinformed him "in order to procure the guilty plea for the prosecution." Doc. 9 at 4. Petitioner also contends that counsel misled him about the superseding indictment, which he claims the government acquired form the grand jury in order to coerce him to plead guilty. Doc. 2 at 4. In addition to the charge of conspiracy to distribute a controlled substance alleged in the original indictment, the superseding indictment charged Petitioner with two counts of possessing a firearm in furtherance of a drug trafficking crime and one count of using or maintaining a drug involved premises. Crim. Doc. 137. Petitioner claims that counsel rendered ineffective assistance when he "convinced [Petitioner] to enter into a plea agreement to count one of the original indictment" to

4

avoid "the complications of defending against numerous counts in the superseding indictment."[1] Doc. 2 at 6.

Petitioner maintains that, based on counsel's advice, it was reasonable for him to assume that he only would be held accountable at sentencing for the 2.523 kilograms of methamphetamine he stipulated to as a part of his guilty plea. Doc. 2 at 6. He further avers that "his attorney told him . . . his plea and his sentence would be applied to only those facts" Doc. 2 at 6. Petitioner contends that, since the original indictment did not include any other counts, there were "no counts left for him to even give any thought" about. Doc. 2 at 6. He argues that his counsel's representations, along with the language barrier,[2] hindered him from making an informed decision. Doc. 2 at 5-7. In his memorandum, Petitioner concludes that this resulted in the deprivation of effective assistance during critical stages of the criminal process, Doc. 2 at 5, which caused him to suffer prejudice, thus rendering the plea involuntary. Doc. 2 at 5-7.

The record belies Petitioners claims. In his plea agreement, Petitioner affirmed that his plea of guilty was freely and voluntarily made and was not the result of force or threats or of promises apart from those set forth in the plea agreement. Crim. Doc. 172 at 5. He further agreed that he was fully satisfied with his lawyer's legal explanations of the plea agreement, his rights affected by the agreement, as well as alternatives available to him other than entering into the plea agreement. Crim. Doc. 172 at 6.

Petitioner repeated these affirmations with the benefit of an interpreter at rearraignment.

---

[1] Petitioner infers that the superseding indictment required him to subsequently defend against evidence that was not related to the offense of conviction, Doc. 2 at 6, and that was used to increase his punishment. Doc. 9 at 3.

[2] As Spanish is Petitioner's primary language, he claims that his lack of proficiency in English was used to undermine his understanding of the law and the representations that were made to him. Doc. 2 at 7.

5

Crim. Doc. 482 at 2. He admitted under oath that he had reviewed the indictment (which was translated into Spanish for him) and that he understood the elements of the offense to which he was pleading guilty. Crim. Doc. 482 at 11-12. Petitioner confirmed that: (1) he had reviewed the plea agreement (which was also translated into Spanish for him) with counsel and understood all of its provisions; (2) no one had made any promises to induce him to enter into the plea agreement; and (3) he was freely and voluntarily pleading guilty. Crim. Doc. 482 at 13-15, 17-18. Petitioner confirmed that he had reviewed the factual resume (which was also translated into Spanish for him) before signing it, and that the stipulated facts contained in it were true. Crim. Doc. 482 at 21-22. He further averred that he was fully satisfied with his counsel's advice. Crim. Doc. 482 at 10-11.

Additionally, Petitioner affirmed that he understood that by pleading guilty to count 1 of the original indictment he was subject to a full range of punishment– namely a maximum sentence of 40 years' – and that he had discussed the sentencing guidelines with counsel. Crim. Doc. 482 at 7, 16, 18-20. Petitioner averred that he understood that only the Court would determine and assess his sentence after considering the PSR and consulting the Sentencing Guidelines. Crim. Doc. 482 at 20. He further agreed that he would be bound by his plea even if the sentence was higher than expected. Crim. Doc. 482 at 20.

Petitioner offers no reliable evidence to rebut the above record and the District Court's findings that his guilty plea was knowing and voluntary. Crim. Doc. 482 at 22; Crim. Doc. 195 at 1. He relies on his self-serving assertions in his memorandum and reply, but those statements are uncorroborated and, thus, insufficient to overcome his sworn testimony and conduct during the plea proceedings. *See Cervantes*, 132 F.3d at 1110 (noting that the petitioner must produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment

6

testimony and plea agreement, which refuted the petitioner's allegations).

Moreover, contrary to his assertion, Petitioner did not sign a plea agreement accepting responsibility for only 2.5 kilograms of methamphetamine. Notably the plea agreement does not specify a drug quantity. Crim. Doc. 172. While the factual resume stipulates that during the conspiracy, Petitioner possessed with intent to deliver 2.5 kilograms of methamphetamine, Crim. Doc. 174 at 2-3, Petitioner acknowledged at rearraignment that the probation officer, in preparing the PSR, could disregard the facts agreed to in the factual resume or consider other facts not agreed to by the parties. Crim. Doc. 482 at 9. The magistrate judge cautioned that if that happened, Petitioner might not be able to withdraw his plea, but would have the opportunity to object to the findings and conclusions in the PSR. Crim. Doc. 482 at 9. Furthermore, Petitioner affirmed that: (1) he had discussed with his counsel how the sentencing guidelines might apply in his case; (2) that he understood that he could not depend on any statement from anyone, including his attorney, as to what sentence would be imposed, and (3) that only the district judge would decide his sentence. Crim. Doc. 482 at 7. Clearly, Petitioner's unsupported assertions that counsel misled him and misadvised him about his plea to the original indictment are contradicted by Petitioner's attestations in the plea agreement and under oath at rearraignment.

Next, Petitioner claims that his sentence was incorrectly enhanced based on counts in the superseding indictment to which he did not plead guilty. Doc. 1 at 4; Doc. 2 at 7. He maintains that facts associated with the superseding indictment should not have considered in determining his sentence. Doc. 9 at 3; Doc. 2 at 7-8. However, he is mistaken. The sentence enhancements were based on the Sentencing Guidelines and facts properly considered in the PSR. Crim. Doc. 252-1 at 8-9. Again during re-arraignment, Petitioner affirmed that he understood the probation

7

officer could consider facts other than those in the factual resume in preparing the PSR, and that the District Judge could consider the PSR in assessing the sentence. Crim. Doc. 482 at 9-10. Petitioner cannot now claim that he was unaware that other facts outside of the factual resume could be included in determining his sentence when he admitted otherwise under oath.

Other circumstances contradict Petitioner's claim as well. Petitioner had ample opportunity after the entry of his guilty plea and through sentencing, more than 14 months, to advise the Court that his guilty plea was involuntary and that counsel had misadvised him about his plea and/or that he was otherwise dissatisfied with defense counsel's conduct. Indeed, Defense counsel averred during the sentencing hearing that he had spoken at length with Defendant, visiting him 16 times, about the "drug extrapolation" in the PSR and the gun enhancement, Crim. Doc. 478 at 5, so Defendant was well aware then of the guideline calculations to which he only now objects.

In addition, at sentencing, the Court overruled counsel's objections to the calculated drug quantity, specifically finding that the "principal driver" of the advisory guidelines range in the case was the "substantial drug quantity that Mr. Velasquez is responsible for." Crim. Doc. 478 at 3-4. Yet, neither during the interim between his guilty plea and sentencing, nor at sentencing, did Petitioner express concerns about the voluntariness of his guilty plea or counsel's allegedly misleading advice. Crim. Doc. 478 at 4-5.

In any event, Petitioner has wholly failed to demonstrate prejudice – namely that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. Petitioner has offered no proof other than his belated assertions here that he even considered doing anything other than entering a knowing and voluntary plea. In fact, he admits in his memorandum that he "does not wish to withdraw his

plea of guilty, because he is in fact guilty," and that he simply wants to be resentenced to 120 months, based on what "he was made to believe he would receive in exchange for his guilty plea." Doc. 2 at 10. However, assuming that defense counsel erroneously advised Petitioner that his sentence would be lower, a defense attorney's predictions of a sentence alone cannot render a guilty plea involuntary. *United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002). Again, Petitioner cannot overcome the fact that he was advised at rearraignment that only the District Court could determine his sentence, after reviewing the PSR. Crim. Doc. 482 at 7-8.

Finally, Petitioner substantially benefited from the plea agreement. As the Presentence Report notes, had he "pleaded guilty to the superseding Indictment, he would be facing a considerably longer sentence."[3] Crim. Doc. 252-1 at 12. The maximum term of imprisonment on Count 1 of the superseding Indictment was life, and Counts 2 and 5 of the superseding Indictment required mandatory <u>consecutive</u> sentences of 5 and 25 years, respectively. Crim. Doc. 252-1 at 12. In the light of Petitioner's solemn assurances under oath of his understanding of the guilty plea process and consequences of his plea, versus the hindsight of an undesired sentence, Petitioner falls far short of meeting his burden to prove he was prejudiced by counsel's allegedly deficient performance.

Accordingly, the Court concludes that Petitioner has failed in his burden to establish that his guilty plea was not knowing and voluntary, let alone that counsel was ineffective. Thus, Petitioner's first claim of ineffective assistance of counsel fails.

### 2. Counsel's alleged failure to object to the drug-quantity calculation

Petitioner's claim of ineffective assistance of counsel at sentencing fares no better.

---

[3] As part of the plea agreement, the government agreed to dismiss the superseding indictment. Crim. Doc. 172 at 4.

9

Petitioner again complains that he did not plead guilty to the drug quantity attributed to him in the PSR, the drug quantity calculation lacked factual support,[4] and his counsel failed to object to the erroneous and unjust calculation. Doc. 1 at 4-5. He argues that it was counsel's duty to protect him from a sentence that was a violation of due process and a breach of his plea agreement. Doc. 2 at 7. However, as previously mentioned herein, and as the Government correctly notes, Petitioner's counsel <u>did</u> object to the drug quantity calculation. The fact that he did not prevail does not make him ineffective. Doc. 8 at 16 (citing *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) (holding that unsuccessful efforts do not constitute ineffective counsel relief)).

Finally, the Court of Appeals for the Fifth Circuit found the arguments Petitioner raised on direct appeal (which included a challenge to the PSR's drug-quantity calculation) frivolous, thus, this Court will not revisit the issue. *See* Crim. Doc. 503 at 1; *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) ("reconsidering an issue raised on direct appeal is beyond the narrow scope of § 2255 review") (citation omitted). Also, insofar as Petitioner seeks to challenge the District Court's application of the Sentencing Guidelines, his claim is not cognizable on section 2255 review. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *Segler*, 37 F.3d at 1134 (misapplication of sentencing guidelines does not give rise to a constitutional issue cognizable under section 2255). Accordingly, Petitioner's second claim of ineffective assistance of counsel also fails.

---

[4] In calculating the drug quantity, the PSR relied on 2,523 grams of methamphetamine that Petitioner sold between May 6 and June 3, 2011, and computed a weekly average drug sale of 630.75 grams. Crim. Doc. 252-1 at 6-7. The weekly average was then multiplied by 160 weeks (from December 7, 2009, when Petitioner first sold methamphetamine to an undercover agent until January 28, 2013, when he was arrested), which resulted in a total estimate of 100.9 kilograms. Crim. Doc. 252-1 at 7.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the motion to correct sentence under 28 U.S.C. § 2255 be **DENIED**.

**SIGNED** August 10, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE